```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
SHARYN BILENKER,
                                          MEMORANDUM ORDER
          -against-                       18-CV-4514 (DRH)

              Plaintiff,

BROADRIDGE FINANCIAL SOLUTIONS,
and ROBERT SCHIFELLITE,

              Defendants.
-------------------------------X
```

A P P E A R A N C E S:

For the Plaintiff:
    Hartmann Doherty Rosa Berman & Bulbulia, LLC
    800 Third Avenue, 28th Floor
    New York, New York 10022
      By: Paul S. Doherty, III, Esq.
          Heather Adelman, Esq.

For Defendants:
    Epstein Becker & Green, P.C.
    250 Park Avenue
    New York, New York 10177
      By: Daniel R. Levy, Esq.
          Shira M. Blank, Esq.
          Jeremy M. Brown, Esq,

HURLEY, Senior District Judge

Pending before the Court is Sharyn Bilenker's ("plaintiff" or "Bilenker") application for a preliminary injunction enjoining her former employer, Broadridge Financial Solutions, Inc. ("Broadridge"), from endeavoring to enforce a restrictive covenant contained in a restricted stock agreement entered into between the parties. The restrictive covenant provides in pertinent part:

> In my position(s) with Broadridge Financial
> Solutions, Inc., its subsidiaries and

> affiliates . . . , I participate in policy decisions and have access to Broadridge's confidential information and trade secrets. I enjoy substantial compensation and benefits from Broadridge and am participating substantially in its 2007 Omnibus Award Plan, as amended. Since it is in Broadridge's best interests that all employees in executive positions execute restrictive covenants (this "Agreement"), I agree as follows:
> 1. During the period that I am a Broadridge employee and ending twelve months after the date I cease to be a Broadridge employee for any reason whatsoever (the "Non-Competition Period"), I will not . . . become . . . employed by . . . any person, corporation, partnership or other entity whatsoever . . . engaged in any aspect of Broadridge's businesses . . . in a capacity which is the same or similar to any capacity in which I was involved during the last two years of my employment by Broadridge.

(Broadridge Restrictive Covenant, dated October 2, 2017, at page 1 (DE 22-1 at page 24).)

## BACKGROUND

Broadridge is a public corporation which functions as "a global financial technology services company." Its largest division, Investor Communications Solutions ("ICS"), "primarily provides communications services to banks, broker-dealers and public companies including the distribution and management of proxy voting and statements, annual reports and other required financial documents." (Oct. 4, 2018 Bilenker Aff. (DE 22-1) at ¶ 4.)

Bilenker began working for Broadridge in January 2008 as a vice-president in its corporate strategy group. (Id. at ¶

5.) In or about November 2009, she transferred to the ICS division. (Id.) In that capacity, she maintains that her role was essentially managerial in the sense of overseeing project and product activities as well as addressing regulatory affairs. (Id. at ¶ 7.)

Bilenker decided to leave Broadridge upon being bypassed for a promotion whereupon she solicited an offer of employment from A-Say, Inc. ("Say"), a start-up competitor of Broadridge. "By letter dated June 21, 2018 to Bilenker's new employer [viz. Say] on which Bilenker was copied, counsel for Broadridge stated that her new position of employment would violate the Restrictive Covenant [as earlier explained in the June 21st communication]." (Compl. (DE 1), at ¶ 36.) It is Bilenker's belief that Say "will not employ [her] until this matter is resolved," (Oct. 17, 2018 Bilenker Supp. Aff. (DE 32) at ¶ 28), and she is fearful that, given its start-up status, Say "will not be willing or able to hold the position open for [her] until the conclusion of the full non-complete term (June 29, 2019)." (Id.) At present, she is between jobs doing consulting work at $1,000 per week[1]. Thus, plaintiff posits, time is of the essence as to her preliminary injunction application.

## POSITIONS OF PARTIES

It is Bilenker's position that her activities at

---

[1] Bilenker's annual base salary at Broadridge was $270,000.

Broadridge did not involve trade secrets, she was not privy to confidential client information, nor may her services be legitimately characterized as unique or extraordinary. Such being the case, plaintiff posits, Broadridge has no protectable interest justifying enforcement of the non-compete restrictive covenant.[2]

In describing the hardship she has and will continue to endure as a result of Broadridge's position, Bilenker proffers in her supplemental affidavit that:

> 26. My background and expertise is in the shareholder communications space, and this is the profession that I wish to continue to be engaged and employed. There are very few companies that specialize in shareholder communications, and based on Broadridge's definition of a competitor, I would be prohibited from working for any of them. This would include proxy solicitors, transfer agents and other providers of shareholder services. There are limited career options for someone with my background and expertise within the field.
>
> 27. I will suffer personal damage beyond the impact of lost earnings for a year, during the pendency of the restrictive covenant. Because I am unable to work in my chosen filed, I will lose the opportunity for advancement, be

---

[2] "New York courts have recognized four legitimate interests that may be asserted to support a restrictive covenant: (1) protection of trade secrets, (2) protection of confidential customer information, (3) protection of the employer's client base, and (4) protection against irreparable harm where the employee's services are unique or extraordinary." Cenveo Corp. v. Diversapack LLC, 2009 WL 3169484, at *7 (S.D.N.Y. Oct. 1, 2009)(citing BDO Seidman v. Hirshberg, 93 N.Y. 2d 382, 388-89(1999).

> unable to continue to learn and grow within my field, losing valuable skills and knowledge, and be unable to continue to develop professionally.
>
> . . . .
>
> 29. The litigation process is taxing on me, both financially and emotionally. While I am spending a great deal of money in pursuit of this litigation, I have also been unable to find comparable full-time employment and am unable to contribute to the support of my family at the level at which we had become accustomed.

(Oct. 17, 2018 Bilenker Supp. Aff. (DE 32) at ¶¶ 26, 27, 29.)

In essence, Bilenker maintains that should her career path continue to be interrupted for a year, her future prospects will be adversely affected in a non-monetary compensable fashion.

Broadridge contends that the true nature of Bilenker's duties and responsibilities while in their employ are not as she reports but rather implicates legitimate protectable interests of Broadridge, particularly as to trade secrets. Being privy to such information mandates, defendants urge, that the Court not permit Bilenker to avoid the non-compete agreement lest Say unfairly benefit from Broadridge's trade secrets.

### ORAL ARGUMENT BEFORE THE UNDERSIGNED

On October 29, 2018, the parties, after providing voluminous, well crafted written memoranda of law and declarations to the Court, orally argued their respective positions. But no testimony was elicited on that, or on any other date and no discovery has thus far been conducted.

## STANDARD FOR ISSUANCE OF A PRELIMINARY INJUNCTION

In order to obtain a preliminary injunction, "a movant must show: (1) irreparable harm; and (2) either (a) a likelihood of success on the merits of the claim, or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and a balance of the hardships tipping decidedly in favor of the moving party." D.D. ex rel. V.D. v. N.Y.C. Bd. Of Educ., 465 F.3d 503, 510 (2d Cir. 2006). "A showing of irreparable harm is the single most important prerequisite for the issuance of the preliminary injunction." Devos, Ltd. v. Jacob Record, 2015 WL 9593616, at *7 (E.D.N.Y. Dec. 24, 2015)(quotation marks and citation omitted). "If irreparable harm is remote, speculative or mere possibility the motion must be denied." Dorey v. Nat'l Union Fire Ins. Co., 934 F.2d 30, 34 (2d Cir. 1991). If the movant's injury can be _adequately_ compensated by money damages, injunctive relief will not be forthcoming. Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995)(citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)). The operative word in the last sentence is "adequately."

In addressing an application for a preliminary injunction in a non-compete context such as the one at bar, "monetary implications are not the only factor [the] Court must

consider when evaluating the hardship on the employee.[3] Future career prospects are an important factor as well." Int'l Bus. Machines v. Visentin, 2011 WL 672025, *23 (S.D.N.Y. Feb. 16, 2011) (Court rejected ex-employer's contention that the fact ex-employee would receive his full salary from new employer during the non-compete period eviscerated the claim of undue hardship; the basis for that conclusion was ex-employee's uncontradicted testimony that "if he does not work for the next twelve months," he may lose his position with the new employer); see also Baxter Int'l, Inc. v. Morris, 976 F.2d 1189, 1194-95 (8th Cir. 1992)(affirming non-enforcement of non-compete provision, in part, because a protracted absence could alienate employee's new employer).

Attention will now be focused specifically on the information thus far presented juxtapositioned against the necessary elements for injunctive relief to issue:

1. Irreparable Harm

Absent from movant's submissions is a detailed recitation – as distinct from a conclusory assertion (see Oct. 17, 2018 Bilenker Supp. Aff. at ¶ 29) – of her efforts to obtain comparable employment during the non-compete period. It is far

---

[3] In determining whether an employee non-compete agreement is reasonable, hardship on the employee is an essential part of the analysis. BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388-89 (1999).

from self evident that such a well educated and seemingly accomplished administrator could not find another high level management position consistent with her experience and expertise if she diligently sought to do so. Simply put, Bilenker has not established the irreparable injury prong of her application for a preliminary injunction based on the papers submitted. Testimony at a hearing may cure that deficiency.

    2. Likelihood of Success or Sufficiently Serious Question Going to the Merits

The linchpin as to the alternate "likelihood of success" and "serious question" parts of the analysis, as gleaned from the written submissions and oral argument, hinges upon whether Bilenker had Broadridge trade secrets.

What constitutes a trade secret is determined under the law of the State of New York. Silipos v. Bickel, 2006 WL 22650 *3 (S.D.N.Y. Aug. 8, 2006). New York courts typically follow the definition provided in section 757, comment(b) of the Restatement of Torts. That definition provides in pertinent part:

> A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him the opportunity to obtain advantage over competitors who do not know . . . it.

See FNC Corp. v. Taiwan Tainan Giant Indus. Co., 730 F.2d 61, 63 (2d Cir. 1984). The information thus far placed before the Court presently falls short of establishing either of the two alternate captioned prongs which, with a showing of irreparable injury, are

prerequisites to the issuance of a preliminary injunction.

## FINAL COMMENTS AND CONCLUSION

The burden of proof in seeking the extraordinary remedy of a preliminary injunction rests with Bilenker, an obligation, which for the reasons indicated, she has failed to discharge based on the written submissions. For the Court to decide the key issues, i.e. whether plaintiff (1) has sustained irreparable injury and (2) possesses one or more trade secrets, testimony needs to be taken thereby affording me an opportunity to observe the demeanor of the witness or witnesses and, more importantly, to benefit from the truth-seeking function of cross-examination. Moreover, as the trier-of-fact, I anticipate I may ask some questions for comprehension or clarification purposes.

Counsel were told prior to the October 29th return date of the Order to Show Cause not to bring witnesses on the theory that the issues might be narrowed, if not resolved, absent the need for testimony. That possibility only partially materialized. Plaintiff's assertion that she "had no idea the Restrictive Covenant existed because" "it was buried in the middle of the restricted stock agreement," (Oct. 4, 2018 Bilenker Aff. (DE 22-1) at ¶ 27), is not convincing in view of her electronically communicated acceptance of the readily understandable covenant on multiple occasions. See also Oct. 29, 2018 Hearing Transcript ("Tr.") at 23:18-22.)

Similarly, unconvincing is defendants' insistence that the time separating Broadridge's June 21, 2018 letter to Say, and plaintiff's September 11, 2018 letter to the Court requesting leave to move for a preliminary injunction, belies the claimed need for such expedited relief. Although a factor worthy of consideration, it certainly is not a bar to the relief sought given the pre-litigation settlement efforts reported by plaintiff's counsel and the complexity of the matter. Also resolvable from the written submissions is whether the restrictive covenant suffers from overbreadth as urged by plaintiff and is thus unenforceable. Simply put, it does not. Its one year non-compete provision is reasonable, Ecolab, Inc. v. K.P. Laundry Mach., Inc., 656 F. Supp. 894, 898 (S.D.N.Y. 1987), as is its global territorial scope given plaintiff's acknowledgment that Broadridge "is a global financial technology services company." (Complaint, at ¶ 8; see also Tr. at 20:6-13.)

What is not resolvable absent testimony being taken, as explained earlier, concerns the irreparable injury issue and whether plaintiff possess defendants' trade secrets. To explore those core issues, a hearing is scheduled before the undersigned for 10:00 a.m. on January 7, 2019.[4]

---

[4] In the event counsel is unavailable for the scheduled date or time, s/he shall consult with opposing counsel and provide two alternate dates and times by letter filed on ECF on or before November 28, 2018.

To the extent either or both parties desire expedited discovery, they should contact Judge Locke for a schedule.

SO ORDERED.

Dated: November 16, 2018
      Central Islip, New York

_____
DENIS R. HURLEY, U.S.D.J.